Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office for the Appellant, Kevin Jones. I'm going to try to reserve about five minutes of my time for rebuttal, if possible. Mr. Jones contends that the California Court of Appeal made an unreasonable determination of the facts and the law in finding that his statement to the police was not obtained in violation of Miranda. In this case, at a point in the interrogation before Mr. Jones admitted being at the scene of the shooting, Mr. Jones told the interrogating officer that he did not want to talk anymore. The officer acknowledged that he understood, but attempted to continue the interrogation. This was a clear violation of Miranda, because when the suspect says, I don't want to talk anymore, the only acceptable police response is to terminate the questioning. Counsel, I've been puzzled by this case because there's sort of an overlap between right of silence and right to counsel. What kind of a case is this? This is a right to silence case, Your Honor. There's no right to counsel? No. He did not ask for a lawyer. He invoked his right to remain silent by saying, I don't want to talk anymore. And is the standard any different between a right to silence case and a right to counsel case? There was, um, there's some issue in some of the papers about Burgess, which was decided after this case, which said, which brought the right to counsel case up to the standard of the right, uh, right to remain silent up to right to counsel, and that they both have to be unambiguous. And that seems to have been a sticking point for some of the court, but I don't understand why, because even Burgess says, all the petitioner, all the suspect has to say is, I don't want to talk anymore. That's a simple, unambiguous invocation of the right to remain silent, which requires immediate cessation of interrogation. So there was, at the point in time of this inquiry, I think, a difference as to whether or not it had to be unambiguous. That was resolved in Burgess, which happened after the fact. But even Burgess says, we don't, this doesn't apply to you, Mr. Jones, because if, because Burgess specifically says, saying that I don't want to talk anymore is a simple and unambiguous invocation of the right to remain silent. So even under Burgess, and that's relying on Miranda. That's not a new, a new finding or anything. That's going back to Miranda. All you have, and Miranda says, in any way, at any time, all you have to do is say that you don't want to talk anymore, to invoke the right to remain silent. So I think that there's some question about Burgess. I don't understand why the report and also the COA seem to feel that Burgess is an issue. Because I think if you look at Burgess, it says that we have to prevail. Because Mr. Jones made the simple and unambiguous statement that Burgess says invokes the right to cease interrogation. Well, it could have been, it could have been, it could have been an open question whether the right to be silent was, was applicable, that the ambiguity rules applied at the right to be silent. Because it was clear after Smith v. Illinois that that did apply if you invoked your right to counsel. Now, when I looked at Burgess this morning, it appears to me that the Court acknowledged that gap in its, in the jurisprudence, but that it didn't do it, it didn't do the Sixth Circuit any good. I mean, in other words, they, they applied the rule in that case. So it must not have been that new of a rule. Well, I think, I think that there were cases saying we're not sure, we think that the same principles should apply to both Miranda right to counsel and right to remain silent. But I think prior to Burgess, this Court was saying we don't know what the Supreme Court's going to do, although it seems pretty likely that there's no reason to distinguish between the two rights. But even if you just rely on Miranda, you have Miranda saying the individual only has to say at any time, in any manner, that he doesn't wish to talk. And that clearly happened here. Mr. Jones says, I don't want to talk anymore. And there's no question that was unambiguous, because the opposite, I understood. And when the officer was asked at trial, didn't he tell you he didn't want to talk to you anymore, the officer said, yes, correct, he did. Would it have made a difference if the California Court of Appeal had said, well, it's not clear whether, whether we can rely on post, on, on post-invocation statements in a right to silence case? Well, I think in DeWeaver, the Court says you can't, and I think the law is clear that you can't rely on post-invocation. Well, that was, as of Smith, that was, that was clear for an invocation of counsel. But it may not have been clear until Burgess for a right to, a right to silence. I, I'm now trying, I'm trying to see, in DeWeaver, this Court held that you can't rely on post-invocation. If it's in, if it's in one of our decisions, that doesn't, doesn't do you a lot of benefit, does it? Okay. We're trying to figure out whether DeWeaver was right to counsel or right to silence. But I think that it's an, it's an extension of, or it's in line with Miranda to say, if the right, if you, by saying in any way, in any manner, at any time that you want to remain silent, that has to cease interrogation, then obviously you can't consider any post-invocation statements to make the original invocation ambiguous. Because the only response then is the police have to cut off questioning once you've invoked your right to remain silent. And Miranda goes on and on about how incustodial interrogation is so inherently coercive, that there's so much pressure on the suspect to speak. The officers are trained, they've got the psychological domination. And so the only thing that the individual has to stand up for himself, and the only power the individual has, is to say, I don't want to talk anymore. And once he's said that, officers have to honor it, and have to scrupulously honor it, and immediately cease the interrogation. Counsel, you mentioned, I don't want to talk no more, man, which is what you emphasized, but the total colloquy is more than that. Jollivet says, I understand that, and then, but the bottom line is, then he's interrupted by Jones, who says, you don't want to hear what I'm telling you. Isn't that all one incident? In other words, we can't take the I don't want to talk passage out of context. The context is the entire exchange, is it not? Well, I think that once he said, I don't want to talk anymore, under Miranda, they have to cease. So the fact that they didn't cease means that you can't consider it. And that there might be an issue on that, but I think that the clear implication of Miranda is, once you invoke your right to remain silent, the police cannot continue to question you. And in this case, the officer should have responded, okay, the interview is over. And had he done so, we wouldn't be here today. There wouldn't have been any further. But instead, as in Miranda, they say, the police keep on trying to dominate the suspect. They keep on trying to continue. And the interviewee is not required to repeatedly invoke his Miranda rights, once it's sufficient under Miranda, and therefore, he shouldn't. And I think that the California Supreme Court, or the California Court of Appeal, in finding an ambiguity, deleted the fact that the police continued to question after the invocation by Mr. Jones was made. And that's significant because that, the, Mr. Jones would not have responded. We don't know where they would have responded. But had the police done their job and said, this interview is over, there wouldn't have been any further interrogation. As Miranda said, if the individual indicates it in any manner, at any time they wishes to remain silent, the interrogation must cease. Any statement taken thereafter is the product of compulsion. I'm sorry. So under what provision of ADPA do we grant relief? I think that it's both fact and law, Your Honor. I think that it's an unreasonable factual determination, because for one point, they omit the fact. Why don't you try your best to answer? I'm sorry? Why don't you try your best to answer? Well, I think- I'm not teasing you. I would like to know, what do you think? You know, I'm sitting here trying to, am I right on opinion? That would grant you relief, and not be summarily reversed by the Supreme Court. Thank you, Your Honor. So how would you help me write that opinion? Thank you, Your Honor. The first point I would make is that it's factual. There's a factual issue, the factual unreasonableness. Because appellant says, I don't want to talk no more. His next sentence, however, was you don't want to hear what I'm telling you. The California Code of Appeal- I'm sorry. The next sentence is what? You don't want to hear what I'm telling you. But the California Code of Appeal has omitted the fact that between those two statements, the police continued to question. So that's an unreasonable determination of the facts. They've omitted the fact that the police ignored a clear, unambiguous Miranda invocation and continued to talk to him. That's an unreasonable factual determination. I think it's also an unreasonable factual determination in that they considered the context after the invocation to find that the invocation itself was ambiguous. Let me tweak this just a little bit. Let's say there had not been that interjection by the interrogator. Let's say he was asked the question, oh, I'm sorry. I don't know what proceeded, how he came to say it. But he said, I don't want to talk no more, man. And then perhaps after a short silence, he said, you don't want to hear what I'm telling you. Let's say that he just continued talking like that. Would that be different? I think it would be different. I don't think it would necessitate a different result because there's such a thing as an explanatory refusal. I guess that's what I mean by different. Obviously, it would be different. The question is, would that change the outcome in your view? Then it would be an explanatory refusal, and this Court has held that that's acceptable. It's okay to explain why you don't want to talk. He doesn't want to talk because you don't want to hear what I'm telling you. Does the reason matter? No, the reason doesn't matter. What if he said, I don't want to talk no more because I'm tired? Yeah. There is no limitation on the reason you can invoke your Miranda rights. Well, but it does a little more than that. What it suggests is not an unwillingness to talk, but it suggests an impatience. There's no point in talking to you because you don't want to listen to me. It's really what he's saying. Not that I'm refusing to talk to you, but there's just no point in talking. You're not listening to me. I mean, just without the interjection, isn't that what it would mean? It could certainly be reasonably construed that way, couldn't it? Well, I think he's saying, I don't want to talk no more. I think that's unequivocal, and that's unambiguous. And explaining why he doesn't want to talk no more by saying, you don't want to hear what I'm telling you, I don't think that changes the result. I thought the question was the invocation of the right to silence, not simply I don't want to talk because my voice hurts. That whatever it is that he says, what he has to be doing is clearly invoking his constitutional right to silence. Well, I think on this record he is. He has laryngitis and just says, I don't want to talk. I don't want to talk no more. That's a different I don't want to talk than this one, than one where he's invoking his right to silence. But I think in this case, even if you Like if he said, you know, I don't want to talk no more. Get me some gargle, some salt water to gargle with, you know. That would mean something else. Well, that might have been some of the equivocal. Some of the Respondent's cases have equivocal responses. I don't want to talk about that. I don't want to talk right now. But in this case, it's unequivocal. And even if you take the next sentence as being an explanation for why he doesn't want to talk anymore, I assume that a lot of defendants decide they don't want to talk because they're frustrated that the police don't want to hear what they're saying. Which is different from invoking one's right to silence. Well, I don't think so because I think it's unequivocal when he says, I don't want to talk no more, ma'am. And if the reason is that they're not buying his story, he's still entitled not to speak anymore no matter what the reason is. If he explicitly invokes his rights. And I think in the Supreme Court, no court has held that saying, I don't want to talk anymore is an ambiguous invocation of rights. You want to save some time for rebuttal? Yes, I do. Thank you very much, Your Honor. Okay. We'll hear from the Warden. Good morning, Your Honor, and may it please the Court, David Glassman for the Warden. So, Judge Bybee, the reason does matter, and this also addresses Judge Kaczynski's point. I'd like to discuss the statement in two ways. The first part of it in the context of the law of this Court and the Supreme Court, as well as the statement that the defendant makes immediately thereafter. So the first question is, what is the scope of Miranda? And if it is accurate to say, as the petitioner has alleged in this case, that anything that might be construed as an invocation must be interpreted as an invocation under Miranda because of the language in Miranda that the invocation can be made in any way. The difficulty with that is that we have 50 years of post-Miranda litigation, including a number of cases from the Supreme Court and several cases from this Court, and members of this panel are on those cases. Judge O'Scanlan wrote Clark v. Murphy. Judge Kaczynski, you're on several of these. I remember very well. I remember Anderson v. Trujillo. Exactly. Well, I got my ears pinned back by them in Bancorp for coming out your way, you know. You seduced me into an error. Well, I think it was you personally. If I remember correctly. But in any way, one of your colleagues. It's never personal. No, no. I just meant you in the flesh rather than one of your colleagues. Well, so let's look then at the first statement in light of that case law. And Judge O'Scanlan, you touched on this. The fact is the rule from the Supreme Court was, for many years post-Miranda, that vis-a-vis the right to counsel, the Miranda right to counsel, there must be an unambiguous waiver such that a reasonable officer would only construe it as an invocation. And that's the only reason, obviously, that the Court granted certain. We've got – all we've got is a transcript. We don't have an audio of this. Is that correct? The interview was recorded. I don't believe it's part of the court record. Okay. Was it part of the court record below? Well – Was it part of the record before the California Court of Appeal? I don't know if the Court of Appeal reviewed it. However, in that regard, because I do think it's relevant in this case, there was never a suppression motion on these grounds. This was only ever raised after the fact as an – Okay. But if there's still a transcript, I mean, if there's still an audio, it might be useful. Let me give you a hypothetical. I mean, a hypothetical based on this, okay? There's two ways in which this might have gone down that might shade the way that I think about this. One is if Jones says, I don't want to talk no more, man, period, and silence. No response from the officer. And after a period of an awkward silence, 10, 20 seconds, the officer says, I understand that. But the bottom line is – and then Jones says, you don't want to hear what I'm telling you. Yes. Okay? Now, the other is that this occurred very, very quickly, and that they're actually stepping on each other's lines, okay, sort of theater style, okay? Correct. I don't want to talk no more, man. I understand that. But the bottom line is – and then Jones actually interrupts him to say, you don't want to hear what I'm telling you. So I don't want to talk no more, man. You don't want to hear what I'm telling you comes out as almost one sentence that has a little interruption in there by Officer Joe Lovett. Does it make a difference? It doesn't, and here's why. I'm sorry, it does? It does not. And the reason is, as you pointed out, the reason matters. The reason always matters. And Justice Alito talks about that in Salinas v. Texas, which is the most recent visit from the Supreme Court on Miranda. So that is why there have been cases, for example, that I would submit are much less ambiguous in this case, where there is an explicit invocation in some manner. Clark v. Murphy, Judge O'Scanlan's case, the defendant says, I think I would like to talk to a lawyer. There's an explicit reference to a constitutional right there. Nevertheless, depending upon the circumstances, it may be ambiguous. So in terms of the – But we should have said silence? Well, the point is that – Instead of, I don't want to talk no more, man, instead I have to expressly invoke my right to silence? Is that what you're trying to say? I'm not following you, sir. What I'm trying to say is that where there is no explanation for the basis of that statement, and given that we aren't dealing with two totally segregated events, there's never been any argument in this case other than this is a contemporaneous situation. He makes a statement, the officer begins to speak, and he, in our view, clarifies. What's ambiguous about I don't want to talk no more, man? The reason is. The reason is ambiguous. Why does the officer get to inquire into the reason? And look at what the officer said. Yes. I understand that. The officer didn't – that was not ambiguous to the officer. And the reason, for example, may have been how this was playing out. This is going on for almost two hours. Right. But why does the officer get – if the Jones says I'm invoking my Miranda rights to remain silent, period. Absolutely. Can the officer then inquire as to any additional reasons? He cannot. Are you invoking Miranda because you're too tired? Are you invoking because you've got laryngitis? You want to have – you want to do some gargling? And another alternative is I'm not invoking at all. I'm tired of telling someone who isn't listening to my various inconsistent alibis this story. That may have nothing to do with the exercise of a constitutional right, but simply I'm through with you. Right. The officer doesn't make any inquiry really as to motivation here. I mean, he's not – he's not interested. All he's doing is he's just perpetuating the discussion. But – Those are the concerns the Court had in Miranda. He's just keeping this thing going. As long as he can keep this – keep the guy talking about anything, he'll get the guy to break sooner or later. This is – the interview begins with an unqualified waiver, 63 pages into an 80-minute interview. And there's no further reference by the defendant. Now, and I understand if he invoked, there doesn't have to be. There is this statement followed by what we submit is an explanation. Within that context – and by the way, in terms of the dominance that we're told plays a role in these situations, I also want to point out not only was this claim never directly litigated in the trial court, but this is not a confessions case. This petitioner never confessed. So the way that plays out is the original version that he gives, because he knows that the police know that a car that is linked to him has been used in this drive-by shooting. His original version, after waiving his rights, is that he has no knowledge of this at all, that the car was never out of his possession, that he's not implicated at all. And then as the interview progresses, before the alleged invocation, as the interview progresses, the story entirely changes. Right. And then you get a subsequent interrogation. At that point, of course, from his perspective, a lot of the damage has been done. But at no time does he confess or admit any criminal responsibility. So the fact is that it's not a confessions case at all. I'm sorry. So are you arguing prejudice? I'm arguing that in the context of – He confesses he drove the car. He confesses that he was kidnapped and that a stranger to him, who coincidentally is in his gang, committed a shooting, and that came as a complete surprise to him. His statement – While he was at the wheel. While he was at the wheel. But his prior statement – Well, you know, you and I know that that's enough to hang you, right? The jury takes I was at the wheel, disbelieves I was coerced. I mean, to say it's not a confession is really sort of a – you're not talking to high school kids here. But, Your Honor, my point is that before he makes at least the third inconsistent statement regarding his whereabouts, before the alleged invocation, he has already offered a completely inconsistent, basically ludicrous explanation that his car is stolen from his residence. So what does he do? He decides to attend a cheerleading demonstration. He returns home, and magically the car has been returned, and then he promptly details the car, which conveniently would, of course, destroy potential evidence of a shooting. So what I'm saying is that's all before the statement. And when the officer in here going back and forth, and the officer is making it clear to him how implausible the statement is, the various accounts, the claim of the stolen car, that's when he says, I don't want to talk to you, which is immediately – It seems like a good place for him to stop talking, right? I don't want to talk to you. I guess you're not believing my explanation, so I better shut up. Well – Sounds like a smart kid. Well, I think he does. What are you arguing? Is this an argument of prejudice? Is that what it is? It does go to prejudice, but my point is that we're talking now about why would he possibly – what would he be saying that could be interpreted as something other than an invocation? And my point is that once you see that he's already given these two completely inconsistent versions, there may be frustration on his part because the officer is pointing out to him that they're completely irreconcilable and that he doubts his credibility. So – but, you know, to make it as narrow as possible – I'm not sure how that bears on I don't want to talk to you anymore or I don't want to talk no more, man. It is, I think, part of why a state court making the factual determination, as well as the legal interpretation that is entitled to deference, can appropriately look at it between the initial statement, between everything that he has said, the fact that he makes no other reference to a reluctance to speak, much less does he identify any constitutional basis. I'm not saying he would do that as a lawyer. I have no idea what you're saying. What I'm saying – Why don't you just say it? What does any of that stuff have to do with I don't want to talk no more, man? It provides yet another potential reason why he's saying I don't want to talk that has nothing to do with his right to counsel. I'm sorry. What is that reason? I'm not understanding. You're throwing words at me, but you're not giving me a reason. His reason is you're not listening to what I've told you happened, and therefore I am done talking to you. But why does that matter? Because – Would it make a difference if he said you're not listening to me and therefore I invoke my rights under Miranda? It matters, well, because if the refusal has nothing to do with a constitutional right but simply his desire to end a conversation – He's apparently under Miranda. He's free to do that. Except that when we also read – the petitioner says many times in the brief that interrogation continues. There are no other questions asked of him in between. He volunteers the statement you're not listening to what I'm telling you, meaning that he is reiterating his version of events. And I think that runs just in the – Right, except the officer said I understand that, but it was clear the officer was going to continue to question him. It's clear he's going to say something, but the defendant supersedes that with a statement. Let's suppose that I were to disagree with you and that I thought that this was a violation of Miranda. Do we have to reach a prejudice question? I think we do, because I think ultimately the question under the AEDPA standard is the reasonableness of the denial of relief. So what else came in after he – in my hypothetical, after he invoked his Miranda right? After he invoked his Miranda right, he places himself in the car as an innocent transporter and shooter. That's a pretty significant fact. And I think it's equally significant on a practical level that he has gone from the car was never out of my control. I had it at all times. No one else drives it to. My car was mysteriously stolen and returned. He's going to look utterly foolish. Correct. Correct. But the fact that comes in after the Miranda warning, all I'm trying to figure out is whether there are things that come in after he, in my hypothetical, that he hypothetically invokes Miranda that are significant to the state's case. And you've told me that there are. They're significant in terms of the fact that he does acknowledge at that point that he's in the car during the murder. What my point, though, is that the breaking – He's in the car driving the car. Correct. Correct. And having nothing to do with it, a stranger has committed the murder. A stranger who coincidentally is in his gang, and there's coincidentally a hat in his car that resembles – I mean, it would be different if you said I was in the car in the backseat. Somebody else was driving. Somebody else was shooting. I mean, he says more than that. He says I was driving the car. I was driving the car, and I had no idea that this would happen. It was a complete shock to me, which is totally contrary to the evidence at trial, which is that he is the one that makes the verbal threat to the victims before the passenger fires 13 bullets and kills one of them and injures the other. So, again, the inconsistency and the destruction of his credibility comes from his first and second false statement, long before the third false version is made. And that is another reason why this is a different case from other cases. But I know I'm out of time, so my point is that, yes, standing alone, the statement, I don't want to talk in light of a long line of – you know, Anderson, who I recall, Your Honor, is the case where the defendant says, may I plead the fifth? Now, eventually that turned out the other way, but this Court has evaluated many circumstances in many cases that I submit are at least as ambiguous as this one. And so, finally, in terms of the ADPA role in this case, the question isn't whether this Court in the first instance might construe this as a Miranda violation. The question is whether for all the – Let me ask you this. Let's say he had, I don't want to talk no more, man, but he doesn't have a second line there. The officer says, I understand that, but the bottom line is, and then instead of saying you don't want to hear what I am telling you, he just went on to discuss it. Would that be a different case for you? That would still be a situation I submit where a State appellate court could decide in context it was ambiguous. It would depend because no explanation was stated. I am out of time. Because no explanation was stated. Correct. No rationale at all. And in courts that you have – cases that you have discussed and published opinions, Your Honor, there is typically a reference to the rights that allegedly are being waived. Here there is none. Okay. Thank you. Thank you. I think we have a couple of minutes left. Thank you, Your Honor. I first wanted to respond to the comment that the Deputy Attorney General made, that there are other cases as ambiguous as this. And he referred to one in which the defendant said, I think I would like to talk to a lawyer. There are no cases with something as unambiguous as this. And, in fact, Burgess says this is simple and unambiguous, to say I don't want to talk any more. The cases that the government has cited, that the Attorney General has cited, all relate to equivocal invocations such as I think, maybe, or I don't want to talk about something specific, like I don't want to talk about that. This is a clear, simple, unambiguous invocation. The Attorney General also said there is evidence of a verbal threat by the petitioner, and that's not correct. The issue of prejudice was addressed in our papers. The officers terminated the interrogation as soon as they had the statement from the petitioner that he was the driver of the car, because they knew all they had to do was place him at the scene, and that was enough. The prosecutor, in her closing argument, relied heavily on that. She said that's all you need. All you need to convict him is this statement. The prejudice is clear, and his invocation was clearly unequivocal. And I think I'm over my time, so unless there are any further questions. Okay. So what part of Burgess v. Tompkins do you feel that the California Court of Appeal ruled contrary to? The statement in Burgess that the defendant didn't say anything. He was relying on the fact that he was largely uncommunicative. And the Burgess court said had he made the simple, unambiguous statement that he did not want to talk, that would have served to invoke his right to terminate the interrogation under Miranda. And I think that's what supports our argument. But is that the holding? The holding is that in that context, the statement is ambiguous. And the California Court of Appeal is saying that this statement in this case was ambiguous. Yes. Burgess was decided after the CCA decision in this case. So the report relied on Burgess. And they rely on it to say that you have to have an unambiguous invocation. But Burgess says that this is unambiguous. So that's why I don't think Burgess hurts us. It helps us, if anything. It says it has to be unambiguous, but it says this invocation is unambiguous. And the CCA only finds it ambiguous by ignoring the fact that the police ignored an unambiguous invocation. Thank you, Your Honors. Okay. Thank you. Cases are yet to be submitted.
judges: Kozinski, O'scannlain, Bybee